**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| APOTEX INC.<br>150 Signet Drive<br>Toronto, Ontario M9L IT9,<br><br>and<br><br>APOTEX CORPORATION,<br>2400 North Commerce Parkway #400<br>Weston, Florida  33326<br><br>               Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF<br>HEALTH & HUMAN SERVICES,<br>200 Independence Avenue, S.W.<br>Washington, DC 20201,<br><br>UNITED STATES FOOD AND DRUG<br>ADMINISTRATION,<br>10903 New Hampshire Avenue<br>Silver Spring, MD 20993,<br><br>KATHLEEN SEBELIUS, in her official<br>capacity as SECRETARY, UNITED STATES<br>DEPARTMENT OF HEALTH AND HUMAN<br>SERVICES,<br>200 Independence Avenue, S.W.<br>Washington, DC 20201,<br><br>and<br><br>MARGARET HAMBURG, in her official<br>capacity as COMMISSIONER OF FOOD<br>AND DRUGS, UNITED STATES FOOD<br>AND DRUG ADMINISTRATION,<br>10903 New Hampshire Avenue<br>Silver Spring, MD 20993,<br><br>               Defendants. | Case No. _____ |

**COMPLAINT FOR DECLARATORY, INJUNCTIVE AND OTHER RELIEF**

Plaintiffs Apotex Incorporated, a Canadian company, and its United States affiliate Apotex Corporation (collectively "Apotex"), for their complaint against defendants the United States Department of Health and Human Services ("HHS"), the United States Food and Drug Administration ("FDA"), Kathleen Sebelius, in her official capacity as Secretary of HHS, and Margaret Hamburg, in her official capacity as Commissioner of Food and Drugs (collectively, "Defendants"), state and allege the following:

**INTRODUCTION**

1.  This is an action for declaratory and injunctive relief arising from the Defendants' violation of, and failure to take timely action under: the Federal Food, Drug, and Cosmetics Act ("FDCA"), 21 U.S.C. §301 *et seq.*; the Food and Drug Administration's ("FDA") policies and regulations implementing the FDCA; and the Defendants' violation of the Administrative Procedure Act ("APA"), 5 U.S.C. §§551-553, 701-706.  Specifically, Apotex seeks declaratory and injunctive relief because of Defendants failure to confirm that an Apotex facility that manufactures two pending Abbreviated New Drug Applications ("ANDAs") for generic versions of popular blood pressure-lowering medication operates in conformance with governing standards called current good manufacturing practice ("cGMP").  FDA has failed to do so despite the fact that such compliance recommendations were made for other recently approved Apotex ANDAs that rely on this manufacturing facility, including one that was approved just last week on September 25, 2012.  FDA's unreasonable delay is in part due to its inability to locate an inspectional report that the agency should have long-since created and reviewed.  By failing to provide this compliance confirmation, Defendants are depriving Apotex of its right to have two pending ANDAs treated the same way that FDA has treated several other, similarly situated

ANDAs.  Apotex faces substantial harm as a result of the two improperly stalled ANDAs and the consequent inability to distribute vital and affordable blood pressure-lowering medication to the market in a timely fashion.  Thus, Apotex seeks an order directing Defendants to provide a compliance recommendation for the two pending generic drug applications and to treat these applications similarly to already-approved Apotex applications, because the pending applications rely on the same, already-acceptable drug manufacturing facilities.  Defendants' failure to afford the applications this treatment is arbitrary, capricious, and not in accordance with the law, it is an unlawful withholding and an unreasonable delay, and will cause Apotex substantial, imminent, and irreparable injury, as detailed further herein.

## JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331, 1346, and 1361, as well as 5 U.S.C. § 702.  This Court has authority to grant declaratory relief pursuant to 28 U.S.C. §§ 2201 - 2202.  This Court has authority to grant relief pursuant to 28 U.S.C. § 1651.

3.      There exists an actual and justiciable controversy between Apotex and Defendants requiring resolution by this Court.

4.      Venue is proper in this Court under 28 U.S.C. § 1391(b) and (e).

## THE PARTIES

5.      Plaintiff Apotex Inc. is a corporation organized and existing under the laws of Canada and has its principal place of business located at 150 Signet Drive, Toronto, Ontario, Canada, M9L 1T9.  Apotex, Inc. develops and manufactures quality, lower-priced generic drugs.

6.      Plaintiff Apotex Corp. is a corporation organized and existing under the laws of the State of Delaware, and has its principal place of business located at 2400 North Commerce

Parkway, Suite 400, Weston, Florida 33326. Apotex Corp. is the United States marketing and sales affiliate for Apotex Inc.

7. Defendant HHS is a Department of the United States executive branch. Its headquarters and principal place of business are located at 200 Independence Avenue, S.W., Washington, District of Columbia 20201. Its governmental activities occur within this District and nationwide.

8. Defendant FDA is an agency of the United States and a division of Defendant HHS. FDA has the delegated responsibility to approve and regulate drugs sold within the United States. FDA's headquarters and principal place of business are at 10903 New Hampshire Avenue, Silver Spring, Maryland 20903. Its governmental activities occur within this District and nationwide.

9. Defendant Kathleen Sebelius is the Secretary of HHS and is ultimately responsible for implementation and execution of the FDCA and associated regulations. The Secretary administers the FDCA through FDA. Defendant Sebelius is sued in her official capacity only. Her governmental activities occur within this District and nationwide.

10. Defendant Margaret Hamburg is the Commissioner of Food and Drugs and is directly responsible for FDA's implementation and execution of the FDCA and associated regulations. Defendant Hamburg is sued in her official capacity only. Her governmental activities occur within this District and nationwide.

## FACTS COMMON TO ALL COUNTS

11. No person shall introduce or deliver for introduction into interstate commerce any new drug, unless FDA has approved an application filed with the agency. 21 U.S.C. §355(a).

12. The FDCA sets out approval standards for generic drug products, which are approved after submission and review of abbreviated new drug applications ("ANDAs"). 21 U.S.C. §355(j). ANDAs must include numerous items of information, including the identity and location of manufacturing plants where the drug substance and finished drug product are manufactured. 21 C.F.R. §314.50(d)(1).

13. The FDCA requires that an ANDA shall be approved unless FDA has, among other factors, actual evidence that "the methods used in, or the facilities and controls used for, the manufacture, processing, and packing of the drug are inadequate to assure and preserve its identity, strength, quality, and purity[.]" 21 U.S.C. § 355(j)(4)(A).

14. Thus, the approval process for ANDAs includes a review of the manufacturer's compliance with the cGMP requirements. To do this, FDA investigators determine whether the firm has the necessary facilities, equipment, and skills to manufacture the new drug for which it has applied for approval. *See* FDA's Drug Applications and Current Good Manufacturing Practice Regulations webpage, available at http://www.fda.gov/drugs/ developmentapprovalprocess/manufacturing/ucm090016.htm.

15. FDA has a non-discretionary statutory obligation to approve an ANDA if none of the specified grounds for denying approval apply. 21 U.S.C. §§ 355(j)(4), (5).

16. If FDA lacks inspectional evidence, this is not a basis for finding that the methods used in, or the facilities and controls used for, the manufacture, processing, and packing of a drug are inadequate to assure and preserve its identity, strength, quality, and purity. Therefore, FDA's lack of inspectional evidence does not qualify as a specified ground for denying approval of an ANDA. 21 U.S.C. § 355(j)(4).

17. A generic drug relies on data and information regarding an innovator product, and in order to do so, the manufacturer frequently must challenge the patents of the innovator. In order to encourage generic market entry, the first ANDA applicant to file a substantially complete ANDA with a certification challenging the new drug application ("NDA")-holder's patents (known as Paragraph IV certification) is given a 180-day marketing exclusivity period in which it is the only applicant allowed to market a generic version of the NDA-holder's brand name product, absent certain exceptions not applicable here. 21 U.S.C. §355(j)(5)(B); 21 C.F.R §314.107(c).

18. 180-day marketing exclusivity is valuable and is designed to compensate manufacturers for research and development costs, as well as the risk of litigation from patent holders. *See* 35 U.S.C. § 271(e)(2)(A) (a generic drug company certifying under paragraph IV commits an act of infringement for which the brand-name drug's patent holder can sue).

19. Also of great value is final approval of a "tentatively approved" ANDA immediately after the 180-day marketing exclusivity expires.

20. FDA generally receives ANDAs from numerous manufacturers after the first ANDA is filed, and it will review the information in these ANDAs during the time when patents or marketing exclusivity preclude final approval of the products. If an ANDA is complete and ready for approval before the expiration of any patents or exclusivities accorded to the reference listed drug product or to the first-filed ANDA, FDA issues a "tentative approval" to the applicant. FDA delays final approval of the generic drug product until all patent or exclusivity issues have been resolved. *See* Drugs@FDA Glossary of Terms, available at http://www.fda.gov/Drugs/informationondrugs/ucm079436.htm#T.

21. ANDAs that have received tentative approval do not have an effective approval until FDA issues a final approval letter. 21 C.F.R. § 314.107(b)(3)(B)(v).

22. Defendants assure that manufacturing facilities meet cGMP requirements through inspections. 21 U.S.C. § 374. This process requires that FDA investigators conduct regular inspections of facilities registered with FDA, and sometimes of the specific facility identified in an ANDA to assure that it has adequate processes and controls in place for the drug product covered by that application.

23. If an FDA investigator makes an observation of a potential cGMP deficiency during an inspection, the investigator shall inform the owner of the facility of the nature of the observation. 21 U.S.C. § 374(b). FDA does so through a standard form called the Form FDA 483.

24. After an inspection and, if applicable, issuance of a Form FDA 483, the FDA investigator makes a report regarding the facility and the inspection known as an Establishment Inspection Report ("EIR"). FDA Regulatory Procedures Manual, section 5.10.1, available at http://www.fda.gov/downloads/ICECI/Inspections/IOM/UCM150576.pdf. The investigator also makes a recommendation regarding the overall compliance status of the facility. A facility that is judged by the investigator to be in compliance is rated "no action indicated" or NAI; one that needs corrective action but without agency oversight is "voluntary action indicated" or VAI; one that the investigator believes needs to make corrective action under FDA supervision is "official action indicated" or OAI. FDA Field Management Directive, Establishment Inspection Report Conclusions and Decisions, available at http://www.fda.gov/iceci/inspections/fieldmanagementdirectives/ucm061430.htm.

25. For foreign inspections, investigators are required to submit the EIR to FDA's Center for Drug Evaluation and Research ("CDER") Office of Compliance ("the Office of Compliance") within 30 days of the close of an inspection. *See* FDA's Compliance Program Guidance Manual ("CPGM") 7346.832, Pre-Approval Inspections, at 3. The Office of Compliance relies on these inspectional observations and documents in determining whether a facility is operating in compliance with cGMP requirements when providing a compliance recommendation for pending and future drug applications. The Office of Compliance then makes a compliance recommendation to FDA's Office of Generic Drugs ("OGD") on the compliance status of the facility so that that approval of a specific pending ANDA can proceed.

26. One of Apotex's manufacturing facilities, which is registered with FDA, is Apotex Research Private Limited, Bangalore, India, ("the Bangalore facility"). This facility makes finished drug products for the United States market and its registration number is FEI 3006076314.

27. The Bangalore facility was inspected in April 2010 and classified by FDA as VAI. Therefore, the Bangalore facility was deemed an "acceptable" manufacturing facility for purposes of subsequent ANDA approvals. FDA's Investigations Operations Manual Exhibit 5-14.3.10.2.

28. The Bangalore facility was inspected again by FDA between June 18 and 22, 2012. At the close of the inspection, the FDA investigator presented the facility with a short, one page Form FDA 483, which noted the FDA investigator's four minor observations.

29. After the June 2012 inspection, on August 2, 2012, the FDA investigator wrote to an Apotex official that he "was recommending approval of the Bangalore facility" and he confirmed that his recommendation and his inspectional observations were forwarded to CDER.

As part of his recommendation, and according to FDA procedures, the EIR for the June 2012 inspection of the Bangalore facility is one of the documents the FDA investigator would have prepared and submitted to the Office of Compliance.

30. Consistent with the FDA investigator's statement, FDA thereafter approved four Apotex ANDAs referencing the Bangalore facility as the drug product manufacturing facility:

- On August 3, 2012, FDA approved ANDA 201508 (Montelukast Sodium Chewable Tablets, 4mg and 5mg) and ANDA 201294 (Montelukast Sodium Tablets, 10mg).

- On September 11, 2012, FDA approved ANDA 78777 (Escitalopram Tablets USP, 5mg, 10mg and 20mg).

- On September 25, 2012, FDA approved ANDA 200164 (Tolterodine Tartrate Tablets).

31. As a result of the positive June 2012 inspection, the FDA investigator's "approval recommendation," and approval of these four ANDAs – including one as recently as September 25, 2012 – Apotex concluded that the Office of Compliance had made a determination that the compliance status of the Bangalore facility was acceptable moving forward, and that there were no legal or factual impediments to approval of additional ANDAs from that facility.

32. OGD would not have approved any of these ANDAs without the Office of Compliance having first evaluated the compliance status of the Bangalore facility and providing a recommendation of compliance to OGD.  21 U.S.C. § 355(j)(4).  Thus, the Office of Compliance must have reviewed all required inspectional documents (i.e., the Form FDA 483, and the EIR) for the Bangalore facility, and determined that the facility complies with cGMP requirements.

33. Apotex has two additional ANDAs awaiting approval – ANDA 201505 for irbesartan/hydrochlorathiazide ("HCTZ") Tablets 150+12.5/300+12.5/300+25/mg and ANDA 200832 for irbesartan Tablets 75mg/150mg/300mg.

9

34. The irbesartan drug substance manufacturing facility is Signa S.A. de C.V., Toluca, Estado de Mexico, Mexico ("the Signa facility"). This facility's registration number is FEI Number 3002808161.

35. FDA inspected the Signa facility from March 19 to March 23, 2012. At the conclusion of that inspection, the FDA investigator did not provide any inspectional observations to the facility, which would have been required had the investigator observed a potential cGMP deficiency. 21 U.S.C. § 374(b). Several weeks later, on May 17, 2012, FDA approved Apotex's ANDA 76274 for clopidogrel bisulfate tablets, an ANDA that relied on the Signa facility. Thus, the Office of Compliance would have evaluated and provided a positive compliance recommendation for the Signa facility in order for OGD to have approved ANDA 76274. 21 U.S.C. § 355(j)(4)(a).

36. Irbesartan is the active ingredient in a popular medication used to lower blood pressure. The 180-day marketing exclusivity for irbesartan products expired on September 26, 2012. As a result, the statutory deadline for approval of ANDAs 201505 and 200832 was triggered.

37. FDA did not approve either ANDA 201505 or ANDA 200832 on September 27, 2012, however, and still has not done so. OGD has informed Apotex that the only impediment to approval of ANDAs 201505 and 200832 is a compliance recommendation from the Office of Compliance.

38. Apotex corresponded with officials at the Office of Compliance regarding the status of the Bangalore facility and related compliance recommendations on September 7, 2012, September 8, 2012 and September 11, 2012. At those times, Apotex asked that the Office of Compliance assure that compliance recommendations for a number of pending ANDAs were

10

timely made.  At no time did the Office of Compliance indicate that there was a substantive compliance impediment to approval of the irbesartan ANDAs.

39.     The Office of Compliance has informed Apotex that the delay in giving a compliance recommendation stems from the fact that it does not have the June 2012 Bangalore facility inspection EIR.  In other words, the Office of Compliance has no concerns regarding the compliance of the Bangalore facility – which is evident given its recommendations regarding other ANDAs that were approved in August and September 2012 from that same facility.  Rather, the Office of Compliance simply is awaiting the paperwork that should already be in its custody, as the office would have already relied on the Bangalore facility EIR in making its compliance recommendations for the recently approved Apotex ANDAs manufactured there.

## STATEMENT OF CLAIM

40.     Apotex seeks injunctive and declaratory relief to protect its interests in receiving timely approval.

41.     Apotex has invested millions of dollars in the testing and development of its irbesartan blood pressure lowering medications, and Apotex and its customers had prepared to market the irbesartan products on the day after that the 180-day marketing exclusivity expired.

42.     On September 27, 2012, FDA approved irbesartan generics from other manufacturers while failing to act on the Apotex irbesartan ANDAs that are the subject of this lawsuit, and drug distributors began shipping those products instead of Apotex's irbesartan.

43.     On September 28, 2012, Apotex's counsel had a discussion with the Office of Compliance regarding the compliance recommendation for the irbesartan ANDAs.  The Office of Compliance confirmed to Apotex's counsel that the Office of Compliance did not have the EIR from the Bangalore facility inspection to review.  This is despite the fact that the Office of

Compliance made a compliance recommendation for an Apotex ANDA that was approved only three days before – on September 25, 2012 – for another drug made in the Bangalore facility. Further, FDA's inspection of the Bangalore facility occurred in June 2012 – more than enough time for the required paperwork to be prepared, and sent to and reviewed by the Office of Compliance.

44.     OGD confirmed to Apotex that the only impediment to approval of ANDAs 201505 and 200832 was a compliance recommendation from the Office of Compliance, which is being delayed not because of an actual cGMP compliance issue but because the Office of Compliance cannot find or obtain an EIR that may or may not exist.

45.     Short of this Court ordering FDA to take immediate action, all the evidence indicates that the Office of Compliance will continue to delay providing its compliance recommendation to OGD, even though such a recommendation already was provided for several recently-approved ANDAs.  In the meantime, Apotex is sustaining irreparable injury in the marketplace, as its irbesartan generics fall fatally behind those from already-approved manufacturers on account of Defendants' inexcusable delay.  Apotex therefore brings this action to assure that the Office of Compliance actions do not continue to disadvantage Apotex, the irbesartan ANDAs, and other ANDAs from the Bangalore and Signa facilities that are pending compliance recommendations.

## COUNT I

### VIOLATION OF ADMINISTRATIVE PROCEDURE ACT

46.     Apotex realleges and incorporates by reference the allegations of numbered paragraphs 1 through 45 as if fully restated herein.

47.     The APA prohibits Defendants' implementing the FDCA in a way that is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.  5 U.S.C. § 706(2).

48.     Defendants' actions are arbitrary, capricious, an abuse of discretion, and not in accordance with law because those actions have denied Apotex approval for ANDAs 201505 and 200832 for no reason other than FDA's inability to process necessary paperwork.  FDA already has concluded that both the Bangalore and Signa facilities are operating in compliance with cGMP requirements and has recently approved similarly situated Apotex ANDAs from those facilities.  It now must apply that compliance determination to ANDAs 201505 and 200832.

49.     The APA prohibits agency action that is unlawfully withheld or unreasonably delayed.  5 U.S.C. § 706(1)(A).

50.     The APA mandates that agencies decide matters in a reasonable time, specifically providing for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it.  5 U.S.C. § 555(b).

51.     The APA and FDCA imposed on the Defendants a clear, nondiscretionary duty to act promptly and timely in regards to Apotex's ANDAs 201505 and 200832.  5 U.S.C. §§ 555(b), (e), 706(1)(A); 21 U.S.C. § 355(j)(4).

52.     Apotex has exhausted its administrative remedies, or, to the extent that it has not, is excused from exhausting its administrative remedies because further pursuit of administrative remedies would not further the goals that exhaustion is designed to further.

53.     Apotex has no other adequate remedy at law.  5 U.S.C. § 704.

## COUNT II

### MANDAMUS UNDER 28 U.S.C. § 1361

54. Apotex realleges and incorporates by reference the allegations of numbered paragraphs 1 through 53 as if fully restated herein.

55. The FDCA imposes non-discretionary requirements that FDA must follow in reviewing and approving ANDAs. After 180-day exclusivity for the first to file ANDA has run, FDA must approve all remaining ANDAs that meet the statutory criteria for approval. Because Apotex satisfied the statutory criteria for approving ANDAs 201505 and 200832, FDA owed Apotex a specific duty to approve those ANDAs when 180-day exclusivity expired.

56. FDA failed to adhere to the requirement. The reason for that failure is that, despite repeated requests from Apotex, the Office of Compliance has not performed the required ministerial acts necessary to forward an already-decided compliance status for Apotex manufacturing facilities needed for OGD to approve Apotex's ANDAs 201505 and 200832. The effect of the Court ordering FDA to expedite its completion of those ministerial acts will have no impact on competing agency priorities.

57. FDA's actions as described above will cause substantial, imminent, and irreparable injury to Apotex unless FDA is ordered to make the compliance recommendation.

58. Plaintiff has no adequate remedy at law.

### PRAYER FOR RELIEF

WHEREFORE, Apotex respectfully prays for the following relief:

A. A declaration pursuant to 28 U.S.C. § 2201 that Defendants' failure to provide a compliance recommendation for ANDAs 201505 and 200832, and consequently,

Defendants refusal to grant Apotex approval for ANDAs 201505 and 200832, is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

B. An interim order directing the Office of Compliance to halt the improper withholding of a compliance recommendation for ANDAs 201505 and 200832 and to issue an immediate compliance recommendation to OGD for ANDAs 201505 and 200832, and an order directing OGD to issue final approval of ANDAs 201505 and 200832 immediately.

C. Preliminary and permanent injunctive relief enjoining Defendants from withholding a compliance recommendation for any Apotex ANDA that relies on facilities that FDA has found to be acceptable in that the methods used in, or the facilities and controls used for, the manufacture, processing, and packing of the drug are adequate to assure and preserve its identity, strength, quality, and purity;

D. An order awarding Apotex its costs and attorneys' fees pursuant to 28 U.S.C. § 2412; and

E. Such other and further relief as the Court deems just and proper.

Dated:  October 3, 2012

                              Respectfully submitted,

                              /s/   Steven P. Hollman
                              Steven P. Hollman (D.C. Bar No. 375658)
                              Meredith Manning (D.C. Bar No. 449063)
                              HOGAN LOVELLS US LLP
                              555 Thirteenth Street NW
                              Washington, DC 20004
                              (202) 637-5672